# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

EUGENE CURTIS,  )
  )
   Petitioner,  )
  )
v.  )  Case No. CV408-124
  )
WARDEN WILLIAM TERRY,  )
  )
   Respondent.  )

## REPORT AND RECOMMENDATION

Curtis, who is currently incarcerated at Macon State Prison, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] (Doc. 1.) Respondent has filed an answer opposing the petition. (Doc. 10.) For the reasons that follow, the petition should be **DENIED**.

---

[1] Curtis moved to amend his petition on August 21, 2008. (Doc. 11.) His motion is **GRANTED**.

I.  BACKGROUND

On October 21, 2003, a Chatham County grand jury indicted Curtis on two counts of sale of a controlled substance, one count of possession of a controlled substance with the intent to distribute, one count of possession of a controlled substance, one count of possession of marijuana with intent to distribute, and one count of possession of marijuana over one ounce. (Doc. 1 at 1.) The indictment charged Curtis as a recidivist. (Id.) He pled guilty to the first five counts of the indictment[2] and was sentenced to ten years' imprisonment for each count, to be served concurrently. (Doc. 10 at 1.) Curtis filed a motion to withdraw the guilty plea, which the state trial court denied. Curtis v. Georgia, 609 S.E.2d 240 (Ga. Ct. App. 2005). The Georgia Court of Appeals affirmed the trial court's decision. Id. at 174.

On April 19, 2005, Curtis filed a state habeas corpus petition in the Calhoun County Superior Court. (Resp't's Ex. 2.) The state habeas court held a hearing on the matter and subsequently denied

---

[2] The count charging possession of marijuana greater than one ounce merged with the count charging possession of marijuana with the intent to distribute. (Trial Tr. 14.)

2

Curtis' petition. (Resp't's Ex. 4.) The Georgia Supreme Court denied Curtis' application for a certificate of probable cause to appeal on September 24, 2007. (Resp't's Ex. 5; Doc. 1 at 6.)

Curtis filed the present federal habeas corpus petition pursuant to 28 U.S.C. § 2254 on June 30, 2008, contending that:

(1) his plea of guilty was not freely and voluntarily entered and was coerced; and

(2) appellate counsel was ineffective for failing to raise trial counsel's lack of preparation for trial.

(Doc. 1 at 5-8; Doc. 11 at 1-7.)

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 412 (2000). AEDPA was intended "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see Peterka v.

3

McNeil, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "'greatly circumscribed and highly deferential to the state courts'") (citation omitted); Trotter v. Sec'y, Dep't of Corr., 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's decisions "'and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.'") (citations omitted). These new restrictions on federal habeas review are set forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning and furnish separate bases

for reviewing a state court's decisions. Bell, 535 U.S. at 694; Williams, 529 U.S. at 404-05; Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court decision is "contrary to" clearly established federal law[3] if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Williams, 529 U.S. at 405-06, 412-13. A state court decision involves an unreasonable application of clearly established federal law where that decision correctly identifies the governing legal rule from the Supreme Court's cases but applies it unreasonably to the facts of the particular prisoner's case. Id. at 407-08, 413. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

---

[3] The statutory reference to "clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A federal habeas court may not look to "the case law of the lower federal courts" in determining what federal law is "clearly established." Putnam, 268 F.3d at 1241. This is a retrenchment from former practice, which allowed the federal courts of appeals to rely on their own jurisprudence in addition to that of the Supreme Court when conducting habeas review of a state court judgment. Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd on other grounds, 519 U.S. 1074 (1997).

established federal law erroneously or incorrectly." Id. at 411. Instead, the appropriate inquiry is whether the state court's application of Supreme Court precedent was "objectively unreasonable." Id. at 409; Bell, 535 U.S. at 694; Parker v. Head, 244 F.3d 831, 835 (11th Cir. 2001). Conditioning the writ of federal habeas corpus upon a finding that the state court's legal analysis was *unreasonable* presents "a substantially higher threshold" than the pre-AEDPA standard. Schriro v. Landrigan, 500 U.S. _____, 127 S.Ct. 1933, 1939 (2007).

A state court's factual findings "shall be presumed to be correct" unless rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. Dill v. Allen, 488 F.3d 1344, 1354 (11th Cir. 2007). This deference to state court fact findings, however, does not apply to mixed determinations of law and fact. Parker, 244 F.3d at 836.

A state court's decision rejecting a constitutional claim on the merits is entitled to deference even if the decision is summary in

nature and offers no discussion of the court's reasoning. Wright v. Moore, 278 F.3d 1245, 1253-54 (11th Cir. 2002) (two-sentence opinion affirming defendant's conviction constituted a rejection of his claim on the merits so as to warrant deference); Parker, 331 F.3d at 776 ("the summary nature of [the] decision does not lessen the deference that it is due"). With these considerations in mind, the Court will now turn to Curtis' asserted grounds for relief.

## III. ANALYSIS

### A. Curtis' Plea

Curtis first contends that his guilty plea was not voluntary. (Doc. 1 at 5.) The Georgia Court of Appeals addressed this issue and found that the claim was without merit. Curtis, 609 S.E.2d at 174. As noted above, the Court must review a state court's determination through the lens of clearly established federal law, which in this case arises from Boykin v. Alabama, 395 U.S. 238 (1969).

In Boykin, the United States Supreme Court held that a guilty plea must be knowingly and voluntarily entered into to be

valid. Id. at 242. To show that a plea was knowingly and voluntarily entered, the record must demonstrate that the defendant's plea was informed, voluntary, and made with an understanding of the rights waived by the plea, specifically the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. Id. at 243. Applying the Boykin rubric, the Georgia Court of Appeals found that Curtis' plea was knowing and voluntary, as at the plea hearing

> Curtis swore to the court, both orally and in writing, that he was not under the influence of drugs or alcohol, that he knew the offenses he was charged with, that he understood the maximum and minimum penalties for those offenses, that he understood the terms of the negotiated plea, that he understood the rights he was waiving by pleading guilty, that no one had made any threats or promises to him, that he had received adequate time to consult with his lawyer and was satisfied with his lawyer's services, that his guilty plea was voluntary and that he is in fact guilty of the charges.

Curtis, 609 S.E.2d at 174.

Curtis presently contends that despite his admissions during the plea colloquy, his plea was not voluntary because the trial court's steadfast insistence upon the trial proceeding as scheduled acted to deny him the opportunity to proceed with the retained

8

counsel of his choosing. (Doc. 11 at 4; Doc. 1 at 5.) Specifically, Curtis contends that the state trial court's impatience prevented Arthur Gibson from adequately preparing for the trial, forcing Curtis to plea guilty or continue to trial without adequate representation. (Doc. 11 at 6.)

The facts surrounding the trial court's determination undermine Curtis' position. The Court of Appeals noted that

> when the case came on for trial on October 21, 2003, Curtis appeared in court with both [Tammy] Stokes, who was prepared for trial, and Arthur Gibson, an attorney whom he had hired the previous week. Gibson told the court that although he was not prepared to go to trial, Curtis wanted to retain him and discharge Stokes. The court took a short recess to allow Curtis and the attorneys to confer, but stated that after the recess the trial would begin.
>
> After a 15-minute break, Stokes told the court that Curtis was adamant that he wanted Gibson to represent him, so they had all agreed that Gibson would review Stokes' trial notebook while Stokes picked the jury and argued a similar transaction motion. Gibson would then handle the rest of the trial.

Curtis, 609 S.E.2d at 172; (Trial Tr. 4-7). The trial judge was amenable to this arrangement, but she required Stokes to stay on as co-counsel, thereby guarantying that Gibson had access to Stokes' trial notebook and to Stokes herself. (Trial Tr. 36.) In

addition, Gibson admittedly had a week to familiarize himself with the case, and he had about four hours to review Stokes' notes on the morning of the trial. Curtis, 609 S.E.2d at 173. On these facts, Curtis' assertion that he was constructively denied the counsel of his choice is without merit.[4]

Furthermore, the record reveals that Curtis' plea was still not forthcoming until the judge denied his request to exclude certain similar transactions from trial and the state offered a new plea deal.[5] (Trial Tr. 18-19, 34, 38, 46.) Curtis knew that he faced a minimum of ten years' imprisonment and a maximum of three life sentences plus forty years. (Id. at 19.) Before proceeding to trial, the state offered to recommend a sentence at the very bottom end

---

[4] In addition, the record reveals that Gibson was Curtis' fourth attorney. Curtis, 609 S.E.2d at 172. His fifth attorney filed a motion to withdraw the guilty plea, a sixth attorney filed his notice of appeal, and his seventh and eighth attorneys represented him on appeal. Id. Curtis is clearly a difficult client to satisfy, but the Court is also convinced that he hoped to control the trial court's calendar through his hiring practices. It is well established that "a defendant may not use the right to counsel of choice as a means to unreasonably delay trial. United States v. Thomas, 225 F.3d 660 (6th Cir. 2000) (unpublished table opinion).

[5] Originally, the state offered to recommend a fifteen-year sentence if Curtis pled guilty. (Trial Tr. at 17.) The state lowered its recommended sentence to ten years, if Curtis agreed to plea on October 13, 2003, but that was a one-day-only offer. (Id.) Before proceeding with the jury trial on October 21, 2003, the state once again offered a ten-year sentence. (Id. at 38.)

of the sentencing range in exchange for Curtis' plea. (Id. at 38.) Under these circumstances, it is clear that any lack of preparedness on the part of Gibson played little or no role in Curtis' decision.

Given the facts found by the state court (which Curtis has failed to rebut), along with Curtis' admissions during the plea colloquy,[6] this Court is unable to find that the state appellate court decision was contrary to, or unreasonably applied, Boykin. Consequently, Curtis has failed to show that he is entitled to federal habeas relief on this ground.

### B. Assistance of Appellate Counsel

Curtis next contends that appellate counsel was ineffective for failing to raise Gibson's lack of preparedness for trial. (Doc. 1 at 6.) The state habeas court determined this claim to be without merit under the applicable Supreme Court authority, Strickland v. Washington, 466 U.S. 668 (1984). (Resp't's Ex. 4.)

Strickland created a two-part test for determining whether a petitioner received ineffective assistance of counsel. Id. at 687.

---

[6] Curtis admitted that his plea was voluntary, his lawyers did not place any undue pressure on him to accept the plea, he had adequate time to discuss the plea with his lawyers, and he was satisfied with the services of his lawyers. (Trial Tr. at 47-48.)

First, he must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. Id.

Under the performance prong, deficient performance is "that which is objectively unreasonable and falls below a wide range of competence demanded of attorneys in criminal cases." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990). The reasonableness of the attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. Strickland, 466 U.S. at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Strickland, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The Supreme Court has held that the same Strickland test applies to claims of ineffective assistance of appellate counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986); Smith v. Murray, 477 U.S. 527, 535-536 (1986). In Jones v. Barnes, 463 U.S. 745 (1983), however, the Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. Id. at 750-51. Effective appellate counsel should "winnow out" weaker arguments even though the weaker arguments may be meritorious. Id. at 751-752. "[A] deliberate, tactical decision not to pursue a particular claim is the very antithesis of the kind of circumstance that would warrant excusing a defendant's failure to adhere to a State's legitimate rules for the fair and orderly disposition of its criminal cases." Smith, 477 U.S. at 537.

13

Applying <u>Strickland</u>, the state habeas court held that appellate counsel's decision not to raise the argument was a tactical decision, which did not rise to the level of deficient performance. (Resp't's Ex. 4 at 4-6.) As noted above, Gibson's alleged lack of preparedness did not affect the voluntariness of Curtis' plea, thus appellate counsel's decision not to raise the claim did not constitute deficient performance. Moreover, Curtis cannot show prejudice on these facts, as there is no probability that such a meritless claim would have changed the outcome of the appeal. The state habeas court reasonably applied <u>Strickland</u> to the facts of this case, so this Court may not disturb its holding.

## IV. CONCLUSION

For the foregoing reasons, Curtis' § 2254 petition should be **DENIED.**

**SO REPORTED AND RECOMMENDED** this <u>20th</u> day of October, 2008.

<u>/s/ G.R. SMITH</u><br>
**UNITED STATES MAGISTRATE JUDGE**<br>
**SOUTHERN DISTRICT OF GEORGIA**